IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EMIRA BRODLIC, et. al., | : | |
| | : | Case No.4:04-CV-978 |
| Plaintiffs | : | |
| | : | Judge Jones |
| v | : | |
| | : | |
| CITY OF LEBANON, et. al., | : | |
| | : | |
| Defendants | : | |

**MEMORANDUM AND ORDER**

**September 15, 2005**

Pending before the Court is a Motion for Summary Judgment ("the Motion") (doc. 45) by the Defendants, City of Lebanon, et. al. ("Defendants") which seeks a dismissal of the First Amended Complaint (doc. 4) filed by Plaintiffs, Emira Brodlic, individually, and as the Personal Representative of the Estate of Emir Brodlic, and as the Parent and Natural Guardian of Minor Children NB, MB, HB and EB; and Eldin Brodlic, in its entirety.

Federal question jurisdiction is proper pursuant to 28 U.S.C. § 1331. For the reasons that follow, the Motion is granted in part and denied in part.

**PROCEDURAL HISTORY:**

On May 4, 2004, the Plaintiffs filed a complaint in the United States District

Court for the Middle District of Pennsylvania against the City of Lebanon, Mayor Robert Anspach, Lebanon City Bureau of Police; Sergeant David Gingrich, Patrolman Matthew Shollenberger, Patrolman William Walton, Patrolman Andrew Lebo, Patrolman Frank Batencourt, Patrolwoman Bithia Rissinger ("Defendant Police Officers"); Lebanon County, Lebanon County Department of Mental Health and Mental Retardation and Kevin J. Schrum, Administrator, Philhaven Hospital, and Jeffrey A. Okamoto, M.D. On May 25, 2004, Plaintiffs filed an amended complaint as to all Defendants to which the Defendants filed an answer on July 14, 2004. On July 30, 2004 this Court entered an Order (doc. 36) dismissing Plaintiffs' claims as to the following Defendants: County of Lebanon, Lebanon County Department of Mental Health and Mental Retardation and Kevin J. Schrum, Administrator, Philhaven Hospital and Jeffery A. Okamoto, M.D.[1]

In Count 1 of the amended complaint, Plaintiffs allege that Defendants violated decedent Emir Brodlic's civil rights under 42 U.S.C. § 1983. In Counts 2 through 4 Plaintiffs allege Defendants violated decedent Emir Brodlic's statutory rights under: the Americans with Disabilities Act (Count 2); the Rehabilitation Act of 1973 (Count 3); and the Pennsylvania Mental Health Procedures Act (Count 4).

---

[1] As a result of this Order of dismissal (doc. 36), all references to Defendants hereafter shall not include those previously dismissed on July 30, 2004 unless otherwise noted.

In Counts 5 and 6 Plaintiffs assert professional negligence and respondeat superior claims against the previously dismissed Defendants. In Counts 7 and 8 Plaintiffs assert Survival and Wrongful Death Claims, respectively, against Defendants.

On July 1, 2005 Defendants filed the instant Motion together with a Statement of Material Facts. (Rec. Doc. 46). Thereafter, on July 11, 2005, Defendants filed a brief in support of the Motion (doc. 49), and on August 8, 2005, Plaintiffs filed a brief in opposition to the Motion (doc. 58) together with their Statement of Material Facts. (Rec. Doc. 57). On August 18, 2005, Defendants filed a reply brief. (Rec. Doc. 60). Therefore, the Motion has been fully briefed and is ripe for disposition.

**STANDARD OF REVIEW:**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED .R. CIV. .P. 56(c); see also Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). The party moving for summary judgment bears the burden of showing "there is no genuine issue for trial." Young v. Quinlan, 960 F.2d 351, 357 (3d Cir. 1992). Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences which a fact finder could draw from them. See Peterson v. Lehigh Valley Dist. Council, 676 F.2d 81, 84 (3d Cir. 1982).

Initially, the moving party has a burden of demonstrating the absence of a genuine issue of material fact. Celotex Corporation v. Catrett, 477 U.S. 317, 323 (1986). This may be met by the moving party pointing out to the court that there is an absence of evidence to support an essential element as to which the non-moving party will bear the burden of proof at trial. Id. at 325.

Federal Rule of Civil Procedure 56 provides that, where such a motion is made and properly supported, the non-moving party must then show by affidavits, pleadings, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). The United States Supreme Court has commented that this requirement is tantamount to the non-moving party making a sufficient showing as to the essential elements of their case that a reasonable jury could find in its favor. Celotex Corp., 477 U.S. at 322-23.

It is important to note that “the non-moving party cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact." Pastore v. Bell Tel. Co. of Pa., 24 F.3d 508, 511 (3d Cir. 1994) (citation omitted). However, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir.

1992), cert. denied, 507 U.S. 912 (1993) (citations omitted).

Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)(emphasis in original). "As to materiality, the substantive law will identify which facts are material." Id. at 248. A dispute is considered to be genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

**STATEMENT OF RELEVANT FACTS:**

The facts in this matter are largely disputed. We will, where necessary, view the facts and all inferences to be drawn therefrom in the light most favorable to the Plaintiffs in our analysis of the pending Motion.

On the evening of May 5, 2002, the Lebanon City Police Department ("LCPD") received a call from the Brodlic's neighbor, Ms. Dana Kreiser, to request that police officers respond to the Brodlic home. Mrs. Emira Brodlic had gone to Ms. Kreiser's home, apparently to request her assistance in a developing situation at the Brodlic home. Mrs. Brodlic's husband, Mr. Emir Brodlic, who suffered from bipolar disorder, affective disorder and depression, had ceased taking his medication and was in a

psychotic and delusional mental state. The Brodlics' four minor children remained in the upstairs level of the home throughout the events that occurred that evening.

In response to Ms. Kreiser's call to the LCPD, several officers responded to the Brodlic home, including Patrolman Betancourt, Patrolman Walton, Patrolmen Shollengerger, Patrolman Lebo, Patrolwoman Rissinger and Sergeant Gingrich.[2] Also, Lebanon County Crisis Intervention Counselor Carol Saltzer arrived at the Brodlic home. Ms. Saltzer had prior experience with Mr. Brodlic's mental illness history. Ms. Saltzer spoke with Mrs. Brodlic and obtained Mrs. Brodlic's signature on a § 302 involuntary commitment warrant that authorized Mr. Brodlic's involuntary psychiatric commitment.[3]

Following Ms. Saltzer's exchange with Mrs. Brodlic, Ms. Saltzer attempted to speak with Mr. Brodlic via telephone, but was unsuccessful in

---

[2] Plaintiffs dispute that the officers "responded" to the Brodlic home, but rather that the officers were "sent" to the Brodlic home. This Court is of the opinion that whether the officers were sent or whether they responded is not a fact of any materiality to this action, and that both verbs may be used interchangeably throughout the course of this Order.

[3] See 50 Pa. Const. Stat. § 7302 (2005). A person may be involuntary committed for psychiatric commitment upon execution of a warrant by an authorized person who has personally observed conduct that shows the need for such examination. Mrs. Brodlic, as Mr. Brodlic's spouse, was authorized to execute the warrant and had personal knowledge of Mr. Brodlic's condition and erratic behavior.

reaching him.[4] It is disputed whether Saltzer attempted to speak to Mr. Brodlic through a window in the Brodlic home. Nonetheless, Ms. Saltzer was unable to engage in a conversation with Mr. Brodlic, nor was she able to coax him out of his home, during this course of events.

The ensuing series of events is disputed in great detail by the parties. Defendants allege that Patrolman Betancourt, Sergeant Gingrich and Ms. Saltzer all witnessed Mr. Brodlic take a window curtain and "immerse it in a lit candle." (Rec. Doc. 46 at 5). Plaintiffs concede that Mr. Brodlic was holding a candle, however Plaintiffs specifically deny that Mr. Brodlic attempted to light a window curtain on fire.[5]

Following the officers' entry into the home, both parties concede that pepper spray was dispensed in an attempt to subdue Mr. Brodlic. However, the extent that the pepper spray impaired Mr. Brodlic's breathing and ultimately contributed to his cardiac arrest is disputed. In further dispute

[4] Defendants allege that Mr. Brodlic "ripped the phone out of the wall." (Rec. Doc. 46 at 4). Plaintiffs deny this allegation and contend that Saltzer reached the answering machine during her attempt to call the Brodlic home.

[5] Both parties rely on the depositions of the Defendant Police Officers that were present at the Brodlic home to support their allegations of fact regarding the candle. It is clear to the Court that this fact is in dispute, however the materiality of this fact is not as obvious to us as it is to Defendants. It appears that Defendants are using this factual allegation to support the forcible entry of the officers into the home. It is clear to the Court that the officers possessed the authority to enter the Brodlic home, based upon the §302 involuntary commitment warrant signed by Mrs. Brodlic, in any event.

is the length of time it took to handcuff Mr. Brodlic and remove him from the home. However, both parties concede that Mr. Brodlic was "fighting and actively resisting" custody. (Rec. Doc. 57 at 9; Rec. Doc. 46 at 6).

Mr. Brodlic was then removed from the home.[6] Upon his arrival on the front lawn, Mr. Brodlic remained in a prone position. Plaintiffs allege that Mr. Brodlic was forcibly restrained by the aggregate weight of the police officers for an unspecified period of time until an ambulance arrived at the home to transport Mr. Brodlic. The Defendants do not directly address whether the officers applied their body weight to Mr. Brodlic, and note only that Mr. Brodlic was not "left alone" at any point during his time on the front lawn. (Rec. Doc. 46 at 6).

An ambulance that had been staged by Ms. Saltzer arrived at the Brodlic home following Mr. Brodlic's removal to the lawn. Upon the initial examination of Mr. Brodlic by the EMTs, it was discovered that Mr. Brodlic was unresponsive and without a pulse. CPR was initiated by the EMTs and a pulse restored. Unfortunately, Mr. Brodlic never regained consciousness and died on May 10, 2002, five days following the events that took place at

[6] Plaintiffs claim that Mr. Brodlic was walked out of the house. (Rec. Doc. 57 at 9). Defendants claim that Mr. Brodlic was carried from the home. (Rec. Doc. 46 at 6).

his home.

The cause of Mr. Brodlic's death as indicated in the autopsy report of Dr. Saralee Funke was "anoxic encephalopathy [lack of oxygen to the brain causing death of brain cells] due to cardiac arrest associated with combative excitement and restraint; contributing conditions are cardiomegaly and psychiatric disorder(s)." (Rec. Doc. 46 at 9). Following the autopsy, it was Dr. Funke's opinion, as stated in her report, that Mr. Brodlic's cardiac arrest was "multifactoral." (Rec. Doc. 57 at 13). Plaintiff's expert is of the opinion that Mr. Brodlic's anoxic encephalopathy was caused by "positional or restraint asphyxia induced by police officers." (Rec. Doc. 57 at 13).

**DISCUSSION**:

**A. Count 1: Violations of 42 U.S.C. § 1983**

Plaintiffs assert that the Defendant Police Officers violated Mr. Brodlic's Fourth Amendment right to be free from unreasonable seizure by utilizing excessive and objectively unreasonable force in seizing him on May 5, 2005. Further, Plaintiffs assert that Defendants City of Lebanon, Lebanon City Bureau of Police, William L. Harvey Chief of Police and Mayor Robert Anspach violated Mr. Brodlic's Fourth Amendment right to be free from unreasonable seizure and Fourteenth Amendment due process rights by failing to provide proper training to

the Defendant Police Officers with respect to proper handling procedures of individuals in custody in order to prevent asphyxia of such individuals. We will consider these claims under § 1983 in turn.

**1. Fourth Amendment Claim**

The appropriate legal standard applied to an individual's claim that law enforcement officers used excessive force in carrying out a seizure is objective reasonableness, as applied to the Fourth Amendment. See Graham v. Connor, 490 U.S. 386, 395 (1989). The standard of objective reasonableness is one of careful balancing under which courts are to weigh the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests." Id. at 396.

Defendants claim that the police officers conducted themselves with objective reasonableness and that they did not employ excessive force throughout the course of events that took place at the Brodlic home on May 5, 2002. Defendants support this allegation with several factual statements, including that: 1) Ms. Saltzer, a trained crisis intervention worker, determined Mr. Brodlic was a candidate for psychiatric committment; 2) an ambulance was staged nearby to transport Mr. Brodlic; and, 3) no weapon was used upon Mr. Brodlic other than pepper spray.

Plaintiffs dispute Defendants' allegations of fact and claim that the officers did not act in an objectively reasonable manner. Plaintiffs allege that once Mr. Brodlic was handcuffed, it was not objectively reasonable for the officers to keep him in a face-down position on the lawn, in light of the fact that Mr. Brodlic was not arrested for a crime, but was being restrained for a psychiatric committment. Further, Plaintiffs allege, and Defendants dispute, that the police officers continued to apply the force of their body weight to Mr. Brodlic's back while he lay prone on the front lawn.

After a careful review of the record and and given the genuine issues of material fact noted by this Court, namely the length of time the Defendant Police Officers applied the force of their body weight to the prostrate Mr. Brodlic, or if they did so at all, as well as the nature of restraint tactics used on Mr. Brodlic, summary judgment is not warranted with respect to Count 1 of the amended complaint.

**2. Failure to Train Claim**

The Supreme Court has held that "where the failure to train amounts to deliberate indifference to the rights of the persons with whom the police come into contact," the municipality is liable from injuries sustained at the hands of its officers. City of Canton v. Harris, 489 U.S. 387, 388 (1989). The Supreme Court

explains that deliberate indifference exists when "in light of the duties assigned [to the police officers], the need for more or different training is so obvious and the inadequacy is so likely to result in the violation of constitutional rights." Id. at 390.

It is apparent to the Court from our reading of the depositions taken in this matter that there is a range of training/knowledge concerning positional asphyxia among the Defendant Police Officers. However, there exists a genuine issue of material fact as to whether the training provided, or lack thereof, rises to the level of deliberate indifference. Therefore, summary judgment is not appropriate with respect to the §1983 failure to train claim.

**3. Qualified Immunity Defense**

The Defendants raise the defense of qualified immunity to Plaintiffs' § 1983 claims. Under qualified immunity, "governmental officials performing discretionary function[s] generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

In order to find the Defendants immune from suit, we must find that, viewing the facts in the light most favorable to the Plaintiffs, Defendants did not violate Mr. Brodlic's clearly established rights, or, in the alternative, that an "objectively

reasonable" officer under the circumstances would have believed his actions to be lawful. Anderson v. Creighton, 483 U.S. 635, 640 (1987). Plaintiffs allege that Mr. Brodlic, who was a large man suffering from mental illness, and clearly agitated from his attempts to avoid restraint, was a known risk for positional asphyxiation if improperly restrained. Plaintiffs claim that the police officers restrained Mr. Brodlic in a prone position and applied their collective body weight, which accumulated to an aggregate of over 600 pounds, to Mr. Brodlic's back as he lay on the ground. Defendants deny these allegations. As previously noted, Plaintiffs claim that as a result of this conduct and at some point during Mr. Brodlic's restraint, he became unconscious and was without a pulse.

Given the fact that genuine material issues of fact are in dispute, it is impossible for us to determine whether qualified immunity shields the Defendant Police Officers as a matter of law. See Creighton, 483 U.S. at 646 n. 6; See also Mitchell v. Forsyth, 472 U.S. 511, 526 (1985); Saucier v. Katz, 533 U.S. 194, 201 (2001). For the foregoing reasons, we hold that Defendants are not entitled to a qualified immunity defense.

**B. Counts 2 and 3: Violation of the Americans with Disabilities Act and the Rehabilitation Act**

Plaintiffs allege that Defendants violated Mr. Brodlic's statutory right to be

free from discrimination on the basis of disability under Title II of the Americans with Disabilities Act ("ADA"). It is a violation of 42 U.S.C. § 12132 for a public entity to discriminate against a qualified individual with a disability or to deny such individual the benefits of the programs, services and activities of the public entity.

Although the ADA fails to define programs, services or activities, § 504 of the Rehabilitation Act defines program or activity as "all of the operations of a department . . . of a State or of a local government." 29 U.S.C. § 794(b).[7]

The essence of Plaintiffs' ADA and Rehabilitation claims is that the failure of Defendants to train its police officers how to apply proper restraint procedures for mentally disabled persons caused Mr. Brodlic to be discriminated against and excluded from these government services on the basis of his disability. Presently, the Third Circuit Court of Appeals has not addressed the application of Title II of the ADA to police training or procedures. Although not binding upon this Court, our colleague Judge Yvette Kane has addressed this issue in the case of Schorr, v. Borough of Lemoyne, (1:CV-01-930, Feb. 10, 2003) and we are persuaded by her logic in that case.

Judge Kane's opinion reasons that the legislative history of the ADA tends to

[7] Title II of the ADA is to be read consistently with Section 504 of the Rehabilitation Act; Therefore case law developed under the Rehabilitation Act is applicable to ADA Title II claims. See 42 US.C. §§ 12134(b) & 12201(a); Chisholm v. McMannion, 275 F. 3d 315, 32 (3d Cir 2001).

favor a broad interpretation of the statute, illustrated by the fact that the House Committee that drafted the ADA chose not to specifically define the term "discrimination" in the text of the statute. Rather, the Committee adopted the broad anti-discrimination prohibition of §504 of the Rehabilitation Act, which extends to "all actions of state and local governments." 29 U.S.C. § 794(b) (emphasis added). Further, Judge Kane points to several district court opinions of various circuits that find the ADA applicable to arrests to disabled persons. In light of Judge Kane's detailed analysis of the foregoing, she reasoned, and we agree, that "properly executing §302 involuntary commitment warrants and modifying police practices to accommodate subjects of the warrants are included in 'programs, services, or activities of a public entity' under §12132 of the ADA." (Rec. Doc. 58 at 11).[8]

Accordingly, summary judgment with respect to Counts 2 and 3 of the amended complaint is denied.

### C. Counts 4, 5 and 6: Violations of the Pennsylvania Mental Health

---

[8] It is important to note that at first glance, the holding of Hainze v. Richards, 207 F.3d 795 (5th Cir. 2000), may seem to indicate that Plaintiffs' ADA claim should be disposed of upon this Motion. In Hainze, the Fifth Circuit Court of Appeals held that Title II does not apply a police officer's response to a reported "disturbance," whether or not the person involved suffers from mental disabilities, in the presence of exigent circumstances. See id. at 801. However, as discussed previously in this Order, the level of exigency present at the Brodlic home on the night in question is a materially disputed fact, and therefore the holding of Hainze is not as helpful to the Defendants at this juncture as it might appear.

**<u>Procedures Act; Professional Negligence Claim; Respondeat Superior Claim</u>**

As previously noted, on July 30, 2004, this Court entered an Order (doc. 36) terminating this action with prejudice with respect to Defendants County of Lebanon, Lebanon County Department of Mental Health and Mental Retardation and Kevin Schrum, Administrator, Philhaven Hospital and Jeffery A. Okamoto, M.D. As a result of this Order, we will simply clarify that the state claims under Pennsylvania law in Counts 4, 5 and 6 of the amended complaint are no longer a part of this case, as the claims therein were asserted against the dismissed Defendants. As a result, Counts 4, 5, and 6 will now be dismissed.

**<u>D. Counts 7 and 8: Wrongful Death and Survival Claims</u>**

In the first amended complaint, Plaintiffs claim damages pursuant to Pennsylvania's Survival Act, 42 P.S. §8302 (2005) and Wrongful Death Act, 42 P.S. § 8301 (2005). Defendants seek summary judgment on these claims on the basis of governmental immunity.

It is well established that municipal agencies are protected by governmental immunity from state law claims. <u>See</u> 42 Pa. Const. Stat. § 8541-42; 8545 (2005). Also, under the Pennsylvania Political Subdivision Torts Claims Act ("Tort Claims Act"), "government officials are granted protection from the enforcement of

judgments against then when they act within the scope of their employment." Retenauer v. Flaherty, 164 Pa.Cmwlth. 182 (1994).

In this matter the Defendants, which are governmental agencies and their employees or agents, were clearly acting within the scope of their employment when they executed the § 302 involuntary commitment warrant against Mr. Brodlic. There is nothing in the record which indicates otherwise. Therefore, the Defendants are protected by Pennsylvania's governmental immunity statute, and they may not be subjected to liability under Pennsylvania's Wrongful Death or Survival Acts. We will accordingly grant summary judgment in favor Defendants on Counts 7 and 8 of the amended complaint, and those counts will be dismissed.

**E. Loss of Consortium Claims**

Under Pennsylvania law, loss of consortium means "loss of the company, society, cooperation, affection and aid of a spouse in every conjugal relation." Pahle v. Colebrookdale TP., 227 F.Supp.2d 361, 374-75 (E.D. Pa. 2002)(citing Cleveland v. Johns-Manville Corp., 547 Pa. 402 (1997). "A wife who suffers a loss of consortium does not herself sustain physical injury, but rather, damaged marital expectations, as a result of the injuries to her husband." Pahle, 227 F.Supp.2d at 375. Generally, loss of consortium claims are derivative claims, and may proceed only upon the success of the underlying claim asserted by the injured spouse. See

Id.

However, there is a split of authority among the district courts in the Third Circuit concerning individual claims for loss of consortium raised under § 1983. In Pahle, the Eastern District of Pennsylvania held that "a spouse may assert a claim under § 1983 that the government improperly interfered with her personal right to the services, society and companionship (i.e. consortium) of her husband." Id. at 380. However, other Eastern District of Pennsylvania cases have held the exact opposite, i.e. that individual claims for loss of consortium are not cognizable in § 1983 actions. See Ballas v. City of Reading, 2001 U.S. Dist. LEXIS 657 (E.D. Pa. 2001); Colburn v. City of Philadelphia, 2001 WL 872960, *2 (E.D. Pa. 2001).

It is well established that a wife has no standing to bring § 1983 claims that rest on violations of the husband's constitutional rights. See Pahle, 227 F.Supp.2d at 381 (citing Estate of Cooper By and Through Cooper v. Leamer, 705 F.Supp. 1081, 1086 (M.D. Pa. 1989). To date, the Third Circuit Court of Appeals has never directly addressed the issue of whether "a husband or wife can allege violations of his or her own constitutional rights under § 1983 for unlawful, government imposed injuries to a spouse that have a devastating impact on their marriage." Pahle, 227 F.Supp.2d at 381. However, the Third Circuit Court of

Appeals has permitted a father to assert his own § 1983 claim for violations of his own constitutional rights following his child's death by abuse in a county youth center. See Estate of Baily v. County of York, 786 F.2d 503, 509 n.7 (3d Cir. 1985). Following the Bailey decision, several District Courts have permitted parents to bring suits in their own right under § 1983 for the deprivation of their child without due process by the government. See, e.g., Scheiber v. City of Philadelphia, 1999 WL 482310, *2 (E.D. Pa. 1999); White v. City of Philadelphia, 118 F.Supp.2d. 564, 567 n.1 (E.D. Pa. 1992).

The Pahle court reasons, and we are inclined to agree, that the rights of parents and children recognized in the Bailey decision logically extend to spouses. Therefore, as a result of government action, a wife can be deprived of her constitutional right to her husband's services and may bring an individual claim under § 1983.

Under the Federal Rules of Civil Procedure, only notice pleading, i.e. a short plain statement of facts giving rise to claims for relief, is required for a claim to stand. In Pahle, the wife's individual claim for loss of consortium did not survive summary judgment because the complaint did not specify the wife's individual claim. See Pahle, 227 F.Supp.2d at 374 n.8. In this matter, paragraph 53 of the amended complaint (doc. 4) gives sufficient notice to the Defendants of the Plaintiff

wife's individual claim for loss of consortium under § 1983. Furthermore, paragraph 52 of the amended complaint (doc. 4) gives Defendants sufficient notice of the Plaintiff wife's derivative loss of consortium claim. As a result of this analysis, Defendants' Motion will be denied as to Plaintiff wife's loss of consortium claims.

**NOW, THEREFORE, IT IS ORDERED THAT:**

1. Defendants' Motion for Summary Judgment (doc. 45) is granted in part and denied in part to the following extent:

   a. Defendants' Motion is granted with respect to Counts 7 and 8 of the amended complaint. (Rec. Doc. 4)

   b. Defendant's Motion is denied with respect to Counts 1, 2 and 3 of the amended complaint (doc. 4) and with respect to claims of loss of consortium.

   c. As according to this Court's July 30, 2004 Order dismissing certain parties (doc. 36), Counts 4, 5 and 6 are dismissed.

s/ John E. Jones III
John E. Jones III
United States District Judge